IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MILTON MANUEL SANCHEZ,           )
CARMELO MEDINA, GERARD EDMOND,   )
individually and on behalf of a group of )
individuals similarly situated,  )
                                 )
                Plaintiffs,      )
                                 )   Case No. 1:12cv246 (GBL/TRJ)
        v.                       )
                                 )
LASERSHIP, INC.,                 )
                                 )
                Defendant.       )
_____)

F I L E D

AUG 2 7 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs' Motion for Partial Summary Judgment,

Defendant's Motion for Summary Judgment, Plaintiffs' Motion for Rule 56(d) Relief, Plaintiffs'

Motion for Equitable Tolling, and Defendant's Motion to Strike Portions of Plaintiffs' Affidavits

and Statement of Undisputed Material Facts.  This putative class action is brought by

Massachusetts-based delivery drivers alleging that Defendant Lasership, Inc. ("Lasership"), a

courier delivery service provider, misclassified them as independent contractors instead of

employees, thus entitling them to compensation for unpaid wages, overtime, and unlawful

deductions.

There are five issues before the Court.  The first issue is whether Massachusetts law

applies to the underlying statutory claims in this case when Plaintiffs and Lasership entered

Independent Contractor Agreements ("ICAs") containing a choice of law provision stating that

the ICA is to be construed under Virginia law.  The Court holds that Massachusetts law applies

to the underlying statutory claims because the choice of law provision in the ICA does not cover

statutory wage claims, the contracts at issue in this case were entered and are being performed in

Massachusetts, and Massachusetts has a substantial interest in how Massachusetts-based workers

are classified and compensated.  The Court, therefore, grants Plaintiffs' Motion for Partial

Summary Judgment.

The second issue is whether the Court should strike portions of Plaintiffs' Rule 56(d)

Affidavit of Harold L. Lichten ("Lichten Affidavit") where the affidavit contains statements

about state independent contractor statutes and the effect of these statutes on the profitability of

courier delivery services without the support of admissible evidence.  The Court denies

Lasership's Motion to Strike with respect to the challenged statements in the Lichten Affidavit

because the affidavit is offered in support of a motion brought under Rule 56(d) of the Federal

Rules of Civil Procedure, seeking an opportunity to conduct further discovery.  Rule 56(d)

affidavits are not restricted to statements that would be admissible in evidence.  The Lichten

Affidavit has met the requirements of Rule 56(d) by describing the discovery sought, explaining

how the discovery would preclude summary judgment, and justifying why the discovery has not

been obtained.

The third issue is whether the Court should permit Plaintiffs an opportunity to pursue

further discovery before deciding whether application of the Massachusetts Independent

Contractor ("IC") Statute to Plaintiffs' claims is preempted by the Federal Aviation

Administration Authorization Act of 1994 ("FAAAA").  The Court will permit discovery on the

issue of whether Lasership's prices, routes, or services as a courier delivery service provider

would be significantly impacted by application of the Massachusetts IC Statute to Plaintiffs'

claims in this case.  Without a pre-ruling opportunity for fair discovery, Plaintiffs will be

deprived of a fair opportunity to lodge an effective opposition to Lasership's summary judgment

2

motion on the preemption question. Plaintiffs have presented discovery requests to Lasership on this issue but Lasership had not provided a satisfactory response by the time the company filed its Motion for Summary Judgment. For these reasons, the Court denies Lasership's Motion for Summary Judgment without prejudice and grants Plaintiffs' Motion for Rule 56(d) Relief.

The fourth issue is whether application of the Massachusetts IC Statute to this case is barred by the Commerce Clause of Article I the U.S. Constitution. The Court holds that the IC Statute as applied to this case is not barred by the Commerce Clause because the statute does not discriminate against or unduly burden interstate commerce. Additionally, the application of the IC Statute to this case would not interfere with any system of federal regulation and would not determine which service providers may operate in interstate commerce.

The fifth issue is whether the Court should grant Plaintiffs' request to equitably toll the statute of limitations applicable to Plaintiffs' claims as of April 12, 2011, the date Plaintiffs originally filed their claims in Massachusetts state court. The Court grants the named Plaintiffs an equitable tolling date of April 12, 2011, because they promptly filed suit in this Court after the dismissal of their initial Massachusetts lawsuit, which involved the same parties and claims. However, the Court denies the request for equitable tolling as to unnamed, putative class members because Virginia does not recognize equitable tolling of a statute of limitations for unnamed, putative class plaintiffs.

## I.    BACKGROUND

Lasership, Inc. ("Lasership"), headquartered in Vienna, Virginia, provides transportation services, arranging for the delivery of packages to Virginia, to Massachusetts, and throughout the East Coast. Def.'s Mot. Summ. J., Ex. A ¶¶ 3,4 [hereinafter Aryan Decl.]. Milton Manuel Sanchez, Carmelo Medina, and Gerard Edmond ("Plaintiffs") are delivery and courier drivers

3

who reside in Massachusetts and who work for Lasership out of the company's facility in

Woburn, Massachusetts, pursuant to Independent Contractor Agreements ("ICAs") entered

between Lasership and each driver.  Pls.' Statement of Undisputed Facts, Exs. A-C; Decl. Supp.

Def.'s Mot. Summ. J., Exs. A-C [hereinafter ICA].  Plaintiffs allege that they perform services

for Lasership as employees but are misclassified as independent contractors under the

Massachusetts Independent Contractor ("IC") Statute, Massachusetts General Laws, chapter 149,

§ 148B.  Compl. ¶ 21.[1]  Each Plaintiff has submitted an affidavit in which he declares that he

arrives for work at the warehouse at approximately 5:00 a.m. or 6:00 a.m. every morning, drives

the same delivery route every day, and wears required Lasership-embossed uniforms daily.  Pls.'

Statement of Undisputed Facts, Exs. A-C.

     Lasership argues that converting its Massachusetts-based drivers to employees would

require it to reduce its services and increase its prices due to management and administrative

costs as well as labor-related statutory and regulatory requirements.  Def.'s Mem. Supp. Mot.

Summ. J. at 12-14; Aryan Decl. ¶ 13.  Lasership has submitted a declaration from its president,

Fred Aryan, in which Aryan concludes that "Lasership would be forced to cease operations in

Massachusetts if it were no longer able to use independent contractors to make deliveries."

Aryan Decl. at ¶ 23.  Plaintiffs' counsel, Harold L. Lichten represents in his affidavit that many

other delivery companies operate profitably in Massachusetts using employee-based models.

Pls.' Rule 56(d) Mot., Attach. ¶¶ 8-9 [hereinafter Lichten Aff.].

---

[1] The Massachusetts IC Statute states that an individual performing any service is considered an employee unless:
> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
> (2) the service is performed outside the usual course of the business of the employer; and,
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed[.]

Mass. Gen. Laws ch. 149 § 148B (2012).

The ICAs governing the relationship between Lasership and Plaintiffs contain a Governing Law provision requiring that the contract "be construed according to the laws of the United States and of the Commonwealth of Virginia." ICA at 10. The Governing Law provision also includes a forum selection clause providing that "ANY CLAIMS OR DISPUTES ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT . . . SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING VIENNA, VIRGINIA." *Id.*

On April 12, 2011, Plaintiffs brought a lawsuit against Lasership in Massachusetts state court for misclassification as independent contractors under the Massachusetts IC Statute, seeking compensatory damages under Massachusetts wage laws. In June 2011, Lasership removed the case to the United States District Court for the District of Massachusetts, which dismissed the case without prejudice on February 23, 2012, based upon the forum selection clause in the ICA. On March 6, 2012, Plaintiffs filed their Complaint in this Court for compensatory, declaratory, and injunctive relief, asserting: (1) misclassification of Plaintiffs as independent contractors in violation of the Massachusetts IC Statute (Count I); (2) unlawful refusal to pay wages and improper deductions from Plaintiffs' pay (Count II); (3) failure to pay minimum wage to Plaintiffs (Count III); and (4) violation of Plaintiffs' right to be paid overtime (Count IV). Compl. ¶¶ 1, 35-38. Plaintiffs' wage and overtime claims are contingent upon the determination that they are properly classified as employees under the Massachusetts IC Statute.

On May 16, 2012, Plaintiffs filed a Motion for Partial Summary Judgment seeking a determination that Massachusetts law applies to their statutory claims. Lasership filed a Motion for Summary Judgment on May 15, 2012, seeking a determination that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempts the application of the

Massachusetts IC Statute to Plaintiffs' claims. The primary basis for Lasership's motion is that application of the Massachusetts IC Statute to this case would significantly impact the prices, routes, and services of Lasership as a motor carrier and is therefore preempted under 49 U.S.C. § 14501(c)(1). In response to Lasership's motion, Plaintiffs filed a Motion for Rule 56(d) Relief, seeking an opportunity to conduct discovery on the impact that the Massachusetts IC Statute would have on Lasership's prices, routes, and services before the Court decides Lasership's Motion for Summary Judgment. Lasership filed a Motion to Strike requesting in part that the Court strike portions of the Lichten Affidavit because it includes legal argument and statements of fact of which Lichten lacks personal knowledge. Plaintiffs also filed a Motion for Equitable Tolling, requesting that the applicable statute of limitations be tolled as of April 12, 2011, the date on which the original Massachusetts lawsuit was filed. The Court heard oral argument on the summary judgment motions on June 20, 2012, and took all pending motions under advisement.

## II.      STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmovant's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the nonmovant to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also* FED. R. CIV. P. 56(e). Rule 56(c)(4) requires that "affidavit[s] or declaration[s] used to support or oppose a [summary judgment] motion . . . be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

Rule 56(d) permits the nonmovant to request that the court defer or deny a summary judgment motion pending further discovery if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" FED. R. CIV. P. 56(d); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) ("permit[ting] a court to deny summary judgment or to order a continuance if the

nonmovant shows through affidavits that it could not properly oppose a motion for summary judgment without a chance to conduct discovery").

## III.   ANALYSIS

### A. Choice of Law

The Court grants Plaintiffs' Motion for Partial Summary Judgment and holds that Massachusetts law governs this action because: (1) the choice of law provision in the contracts at issue here applies only to matters of contract interpretation; (2) the contracts were made in Massachusetts; and (3) Massachusetts has a substantial interest in the subject matter of the case.

### 1. *The Governing Law Provision*

The Court holds that the Governing Law provision in the ICA does not bar the application of Massachusetts statutory law to this case because the provision applies only to matters of contract interpretation.

Under Virginia law, courts adhere to the "plain meaning" rule in interpreting and enforcing contracts. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999). "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Id.* (citations omitted). "The pole star for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used." *Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 618 S.E.2d 323, 326 (Va. 2005). "It is the court's duty to declare what the instrument itself says it says." *Id.* "Virginia law looks favorably upon choice of law clauses in contracts, giving them full effect except in unusual circumstances[.]" *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Choice of law provisions in contracts should be honored "unless (a) it is 'unfair or unreasonable, or [ ] affected by fraud or unequal bargaining power,' . .

8

. or (b) there is some indication that the parties did not clearly intend for the designated law to govern the terms of the contract." *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, No. 3:12CV146–HEH, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012) (citations omitted). "Virginia adheres to the view that parties to a contract may stipulate the governing law" so long as there is a "reasonable basis for the parties' choice." *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F. Supp. 1140, 1144 (W.D. Va. 1979).

In *Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, U.S. Court of Appeals for the First Circuit considered whether a contractual provision prescribing the application of Massachusetts law barred a wage claim based on a Georgia statute. 390 F. App'x 1, 1 (1st Cir. 2010). Under the choice of law provision at issue in *Vertex*, the parties agreed that Massachusetts law would exclusively govern "*all terms of this Agreement*." *Id.* (emphasis added). In an opinion by Justice Souter, sitting by designation on the First Circuit, the court concluded that the Massachusetts choice of law provision governed only the construction of the terms of the agreement and therefore did not bar the statutory wage claim. *Id.* at 3. The court reasoned that "[m]atters apart from construing 'terms' are ostensibly left alone, including any choice of law issue about the applicability of post-breach statutory obligations imposed by a state other than Massachusetts having an interest in the contractual relationship[.]" *Id.* at 2. Additionally, the court noted the difference in language between the contract's choice of law provision and its forum selection clause. *Id.* The forum selection clause language applied to "all disputes in any way relating to, arising under, connected with, or incident to [the] Agreement." *Id.*

> [T]he phrase 'relating to, arising under, connected with, or incident to this Agreement' covers a lot more ground than 'terms of this Agreement,' and the textual contrast within the one contract paragraph makes a rather forceful case for reading 'terms' as 'written terms' and leaving the law governing other issues (like statutory post-termination obligations) untouched by the contracting parties.

9

*Id.*

The choice of law and forum selection provisions in the contract at issue in *Vertex* were very similar to the contractual provisions at issue in the present case. Here, the ICA contains a Governing Law provision stating that "[the] Agreement shall be construed according to the laws of the United States and of the Commonwealth of Virginia, without regard to the choice of law rules of such Commonwealth or any other jurisdiction." ICA at 10. The same paragraph includes a forum selection clause stating that "ANY CLAIMS OR DISPUTES ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN LAW, SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING VIENNA, VIRGINIA." *Id.* The choice of law language speaks narrowly to construing the ICA, in contrast to the forum selection clause language which broadly covers "CLAIMS OR DISPUTES ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT[.]" *Id.* Because Plaintiffs' statutory wage claims arise from and are connected with the ICA, they are covered by the forum selection clause and therefore can only be asserted in either this Court or state courts serving Vienna, Virginia. However, the ICA's choice of law provision covers only issues of how the contract is construed and does not cover statutory wage claims. Thus, the Governing Law provision does not bar application of the Massachusetts IC Statute to the claims in this case.

Lasership cites *Agri-Tech, Inc. v. Brewster Heights Packing, Inc. (Agri-Tech I)*, No. 88-0105-H, 1990 U.S. Dist. LEXIS 19840, at *5 (W.D. Va. Apr. 30, 1990), for the proposition that clauses similar to the Governing Law provision in the ICA should be interpreted to cover non-contractual claims related to the contract. Def.'s Opp'n to Mot. Partial Summ. J. at 9. Brewster Heights Packing, the defendant, filed counterclaims against Agri-Tech, the plaintiff, for

misrepresentation in violation of the Washington Consumer Protection Act and for negligent design and construction in violation of the Washington Product Liability Act. *Agri-Tech I*, 1990 U.S. Dist. LEXIS 19840, at *4. Brewster argued that, because the counterclaims were Washington state statutory and tort claims, they were not covered by the Virginia choice of law clause in the contract between the parties, which provided that the contract would be "governed by and construed under" Virginia law. *Id.* After finding that Virginia bore "a reasonable relation" to the transaction and the parties, the court held that the parties' the choice of law provision covered the defendant's statutory counterclaims. *Id.* The court ultimately granted summary judgment for the plaintiff on those counterclaims. *Id.* On appeal, the U.S. Court of Appeals for the Fourth Circuit concluded that dismissal of the counterclaims was proper under either Virginia or Washington law and therefore declined to reach the choice of law question. *Agri-Tech, Inc. v. Brewster Heights Packing, Inc. (Agri-Tech II)*, 7 F.3d 222, at *5 (4th Cir. 1993) (unpublished). The Fourth Circuit also determined that the defendant's "fraud counterclaim involve[d] at its core issues of contractual interpretation and enforceability." *Id.*

The Court is not persuaded by the *Agri-Tech* cases that the choice of law provision in the ICAs at issue in this case requires applying Virginia law to Plaintiffs' wage claims. First, the statutory wage claims at issue in this case do not "involve at [their] core issues of contractual interpretation[.]" *Id.* Second, the Court does not find that Virginia bears "a reasonable relation" to the employment relation between Lasership and Plaintiffs because Plaintiffs work out of a Lasership facility in Massachusetts and do not work in Virginia. *Agri-Tech I*, 1990 U.S. Dist. LEXIS 19840, at *4. Finally, in *Agri-Tech I*, the district court bypassed a reasoned analysis to justify bringing the defendant's counterclaims within the scope of the choice of law provision. The Court finds the reasoning offered by the First Circuit more persuasive on the question of

whether a choice of law provision like the ones at issue here and in *Vertex* covers non-contractual claims. Thus, the Court holds that the choice of law provision in the ICAs does not bar the application of Massachusetts law to Plaintiffs' wage claims.

### 2. *The Application of Massachusetts Law*

The Court holds that Massachusetts law applies to Plaintiffs' claims for two reasons. First, Plaintiffs' claims arise from their contractual relationship with Lasership, and the underlying contracts were made in Massachusetts and are being performed in Massachusetts. Second, Massachusetts has a policy interest in the subject matter of this case—that is, the misclassification of Massachusetts-based workers as independent contractors and the effect such misclassification has on their wages and benefits. Under either Virginia or Massachusetts choice-of-law rules, Massachusetts law governs this action.

Under Virginia choice-of-law rules, disputes involving the validity, nature, or effect of a contract are governed by the law of the place where the contract is made, unless the contract is performed elsewhere. *Erie Ins. Exch. v. Shapiro*, 450 S.E.2d 144, 145 (Va. 1994). In contrast, Massachusetts takes a "functional" approach to conflict-of-law issues in contract cases "by assessing various choice-influencing considerations" that are responsive to "the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E. 662, 668 (Mass. 1985). "Under the functional approach, the forum applies the substantive law of the state which has the more significant relationship to the transaction in litigation." *Hendricks & Assoc., Inc. v. Daewoo Corp.*, 923 F.2d 209, 213 n.3 (1st Cir. 1991) (citing *Bushkin*, 473 N.E. at 669–70). Factors Massachusetts courts consider in deciding choice of law issues include the place of contracting, the place of performance, the

location of the subject matter of the contract, and the relevant policies of the forum state and other interested states. *Bushkin*, 473 N.E. at 669.

Both Virginia or Massachusetts choice of law rules require the application of Massachusetts law in this case.  Massachusetts law applies under Virginia choice of law rules because Plaintiffs' claims arise from their contractual relationship with Lasership and the contracts at issue were made in Massachusetts and are being performed in Massachusetts. *See Erie Ins. Exch.*, 450 S.E.2d at 145.  Applying Massachusetts choice of law rules, it is apparent that Massachusetts has more significant ties to the subject matter of this litigation. *See Hendricks & Assoc.*, 923 F.2d at 213 n.3; *Bushkin*, 473 N.E. at 669-70.  Plaintiffs all reside and work in Massachusetts, never performed any of their work in Virginia, and have no work-related contact with Virginia.

Massachusetts also has a substantial policy interest in how Massachusetts-based workers are classified and compensated, the subject matter of this litigation.  The "legislative purpose behind the [Massachusetts] independent contractor statute is to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors." *Somers v. Converged Access, Inc.*, 911 N.E.2d 739, 749 (Mass. 2009); *see also* Mass. Gen. Laws ch. 149 § 148B.  In enacting the IC Statute, the Massachusetts Legislature:

> appeared [to be] most concerned with . . . the "windfall" that employers enjoy from the misclassification of employees as independent contractors: the avoidance of holiday, vacation, and overtime pay; Social Security and Medicare contributions; unemployment insurance contributions; workers' compensation premiums; and income tax withholding obligations. . . . Misclassification not only hurts the individual employee; it also imposes significant financial burdens on the Federal government and the Commonwealth in lost tax and insurance revenues.  Moreover, it gives an employer who misclassifies employees as independent contractors an unfair competitive advantage over employers who correctly classify their employees and bear the concomitant financial burden.

*Somers*, 911 N.E.2d at 750 (citations omitted).  Additionally, in 2008, Massachusetts Governor

Deval L. Patrick created a "Joint Enforcement Task Force on the *Underground Economy and*

*Employee Misclassification*[,]" Exec. Order #499 (March 12, 2008), due to a concern about

independent contractor misclassification.  Pls.' Mot. Partial Summ. J., Att. 6.

Given Massachusetts's demonstrated policy interest in the subject matter of this litigation

and significant relation to the contractual relationship between Lasership and Plaintiffs, the Court

holds that Massachusetts law governs Plaintiffs' claims and therefore grants Plaintiffs' Motion

for Partial Summary Judgment.

## B. FAAAA Preemption

### 1. *The Lichten Affidavit*

The Court denies Lasership's motion to strike portions of the Lichten Affidavit because,

as an affidavit offered in support of a Rule 56(d) motion, the Lichten Affidavit is not restricted to

statements that would be admissible in evidence.  Rule 56(c)(4) of the Federal Rules of Civil

Procedure provides that "affidavit[s] or declaration[s] used to support or oppose a motion [for

summary judgment] must be made on personal knowledge, set out facts that would be admissible

in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

FED. R. CIV. P. 56(C)(4).  Rule 56(d), on the other hand, requires that an affidavit used to support

a Rule 56(d) motion "show . . . that, for specified reasons, [the affiant] cannot present facts

essential to justify its opposition [to a motion for summary judgment.]"  FED. R. CIV. P. 56(d).

The Court rejects Lasership's arguments that portions of the Lichten Affidavit should be

stricken for legal argumentation and lack of personal knowledge because the Lichten Affidavit is

governed by Rule 56(d), which does not restrict it to statements of fact that would be admissible

in evidence.  The Lichten Affidavit is offered in support of Plaintiffs' Motion for Rule 56(d)

Relief and is not governed by the same standard as affidavits offered in support of or in opposition to motions for summary judgment. While an affidavit offered in opposition to Lasership's summary judgment motion would be restricted to factual statements that would be admissible in evidence, the Lichten Affidavit is under no such restriction. To the contrary, the basic purpose of Rule 56(d) motions and affidavits is to show that a party needs an opportunity to obtain admissible evidence in order to lodge an effective opposition to a motion for summary judgment. In order to show that genuine issues of material fact may be presented after an opportunity to conduct discovery, a Rule 56(d) affiant, like Lichten, as an attorney, may appropriately make reference to his view of the relevant law and plausible factual allegations that are not yet proven. The issue presented in Plaintiffs' Motion for Rule 56(d) Relief is whether Plaintiffs are entitled to an opportunity to conduct discovery on the effect applying the Massachusetts IC Statute to courier delivery drivers would have on a courier delivery service provider. In deciding this issue, the Court may properly consider statements made by Lichten about state independent contractor statutes and the impact of these statutes on courier delivery service providers like Lasership. For this reason, the Court denies Defendants' Motion to Strike as to the Lichten Affidavit.

### 2. *Significant Impact on Prices, Routes, and Services*

The Court grants Plaintiffs' Motion for Rule 56(d) Relief and denies without prejudice Lasership's Motion for Summary Judgment because Plaintiffs are entitled to a fair opportunity to discover facts essential to justify its opposition to Lasership's motion on the issue of preemption under the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). Specifically, Plaintiffs have not had a sufficient opportunity to conduct discovery on the question of whether a

courier delivery service provider's prices, routes, or services would be significantly impacted by applying the Massachusetts IC Statute to Plaintiffs' claims.

The FAAAA provides that states may not enact or enforce laws "related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1) (2012). State laws "having a connection with, or reference to carrier 'rates, routes, or services' are pre-empted.'" *Rowe v. N.H. Motor Transport. Ass'n*, 552 U.S. 364, 370 (2008) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). Indirect impacts are sufficient to establish preemption if the law's effect on motor carriers' prices, routes, or services is "significant" and more than "tenuous, remote, or peripheral." *Rowe*, 552 U.S. at 370–71.

In *Rowe v. New Hampshire Motor Transportation Association*, the issue was whether the FAAAA "pre-empt[ed] two provisions of a Maine tobacco law [that] regulate[d] the delivery of tobacco to customers within the State." *Id.* at 367. The United States Supreme Court found preemption of the Maine law under the FAAAA because the Maine statute "[forbade] licensed tobacco retailers from employing 'delivery service' unless that service follow[ed] particular delivery procedures." *Id.* at 371; *see also* Me. Rev. Stat. Ann., Tit. 22, § 1555-C(1), (3)(C). The statute's "focus[] on trucking and other motor carrier services . . . creat[ed] a direct 'connection with' motor carrier services." *Rowe*, 552 U.S. at 371. In finding preemption, the Court held that the statute had a "significant and adverse impact in respect to the federal Act's ability to achieve its pre-emption-related objectives." *Id.* at 37 –72 (citation and internal quotation marks omitted). The Court determined that the "Maine law . . . produce[d] the very effect that the federal law sought to avoid, namely, a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide." *Id.* at 372 (quoting *Morales*, 504 U.S. at 378). Significantly, the Court

16

also reasoned that the "law [would] require carriers to offer a system of services that the market does not now provide [and] would freeze into place services that carriers might prefer to discontinue in the future." *Id.* Permitting states to require motor carriers to provide particular services "could easily lead to a patchwork of state service-determining laws, rules, and regulations," which is "inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." *Id.* at 373.

In *DiFiore v. American Airlines, Inc.*, the First Circuit addressed the issue of whether a Massachusetts statute regulating tips was preempted by the Airline Deregulation Act ("ADA")[2] when applied to prohibit a $2.00 curbside check-in fee by American Airlines. 646 F.3d 81 (1st Cir. 2011). The Massachusetts statute's language forbade employers from "demand[ing] . . . or accept[ing] from any . . . service employee . . . any payment or deduction from a tip or service charge given to such . . . service employee . . . by a patron." *DiFiore*, 646 F.3d at 84; *see also* Mass. Gen. Laws ch. 149, § 152A(b). The plaintiffs were a group of porters providing curbside service for the air carrier claiming that the curbside check-in fee violated the state tips law because passengers mistook the fee for a mandatory gratuity for the porters. *DiFiore*, 646 F.3d at 82. The court considered "a set of circuit cases [that] declin[ed] to preempt state anti-discrimination and retaliation laws, as well as one case declining to preempt state prevailing wage laws, *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998)[.]" *DiFiore*, 646 F.3d at 87 (footnotes omitted). The court held that the tips law was preempted by the ADA as applied to the plaintiffs' claim because it regulated the air carrier's curbside services and the fees charged for such services. *Id.* at 87. Thus, unlike

---

[2] Under the ADA, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier[.]" 49 U.S.C. § 41713(b)(1). "Courts have construed [the ADA and the FAAAA] *in pari materia* and have cited precedents concerning either act interchangeably[.]" *DiFiore*, 646 F.3d 81, 86 n.4 (1st Cir. 2011).

17

the aforementioned cases, the tips law as applied to prohibit the curbside check-in fee did "not

merely [regulate] how the airline behave[d] as an employer or proprietor" but had "a direct

connection air carrier prices and services[.]" *Id.* at 88.

In *Mendonca*, the issue was whether the FAAAA preempted assessment of penalties

against Dump Truck Transportation ("Dump Truck") after the company failed to pay its workers

the prevailing wage prescribed by California's Prevailing Wage Law ("CPWL"). *Mendonca*,

152 F.3d at 1186. The Ninth Circuit held that the CPWL was not preempted because, though it

was "'related to' Dump Truck's prices, routes and services, [its] effect [was] no more than

indirect, remote, and tenuous." *Id.* at 1189. The "CPWL [did not] frustrate[] the purpose of

deregulation by acutely interfering with the forces of competition" and therefore was not

preempted by the FAAAA. *Id.* (citation omitted).

The Massachusetts IC Statute at issue in this case does not make reference to motor

carriers' prices, routes, or services, but rather applies generally to all employers and regulates

how they classify employees. *Rowe*, in contrast, involved a state statute that directly regulated

the delivery of tobacco to customers by "forbid[ding] anyone other than a Maine-licensed

tobacco retailer to accept an order for delivery of tobacco" and requiring retailers to use a

delivery services that followed particular delivery procedures. *Rowe*, 552 U.S. at 368. In

*DiFiore*, the state tips law, as applied to that case, was preempted by the FAAAA because it

regulated the transportation of curbside baggage to the loading areas and the prices charged for

those services, and was therefore directly connected to air carrier prices and services. *DiFiore*,

646 F.3d at 87. The Massachusetts IC Statute regulates the classification of workers as

independent contractors and has no direct connection to the prices, routes, or services of courier

delivery service providers like Lasership. Any indirect connection between the Massachusetts

18

IC Statute and motor carriers' prices, routes, or services is insufficient to warrant preemption under the FAAAA unless the statute's impact on these prices, routes, or services is "significant." *Rowe*, 552 U.S. at 370–71.

The parties dispute whether applying the Massachusetts IC Statute to require Lasership to convert its Massachusetts-based drivers from independent contractors to employees would have more than a "tenuous, remote, or peripheral" impact on the company's prices, routes, or services. *Rowe* 552 U.S., at 371. In support of its Motion for Summary Judgment, Lasership argues that application of the Massachusetts IC Statute to this case would significantly impact its prices, routes, and services. Aryan Decl. at ¶¶ 13, 17–18. In his declaration, Fred Aryan, Lasership's president, represents that Lasership cannot practically "employ all of the ICs it uses, as well as all of the individuals who work for [the] ICs." *Id.* at ¶ 13. He insists that "[t]he management and associated administrative costs of adding this number of employees would be cost-prohibitive . . . and prices would also increase." *Id.* Also, Aryan asserts that Lasership's business would be significantly affected if the company was subject to a patchwork of regulations that vary by state, permitting the company to use independent contractors in Connecticut, for example, but not permitting the same drivers to drive across state lines in order to make deliveries in Massachusetts. *Id.* at ¶¶ 14, 15.

Through the affidavit of their counsel, Harold L. Lichten, Plaintiffs have made a sufficient showing under Rule 56(d) that they are entitled to an opportunity to conduct further discovery before the Court decides Lasership's summary judgment motion. Plaintiffs argue that they need an opportunity to conduct discovery in order to test the truthfulness of several of Lasership's specific factual assertions. These assertions include Lasership's claims that converting its ICs to employees would significantly increase its costs, cause it to increase its

prices, and put the company at a competitive disadvantage with respect to deliveries to states surrounding Massachusetts. Lichten Aff. ¶ 5. In his affidavit, Lichten sets forth sufficient facts to render plausible his assertions that courier delivery service providers operate profitably in Massachusetts while utilizing employee-based models or independent contractor-based models with payment arrangements to facilitate compliance with Massachusetts wage laws. *Id.* ¶¶ 7-8. If Plaintiffs are able to obtain and present proof of their allegations, then a genuine issue of fact would be presented as to whether application of the Massachusetts IC Statute significantly impacts the courier service provider's prices, routes, and services. Plaintiffs have not yet had a sufficient opportunity to conduct discovery in order to make this showing, however, as the lawsuit was only approximately two months old at the time Lasership filed its Motion for Summary Judgment. By that time, Lasership had not responded to Plaintiffs' discovery requests and Plaintiffs had not had an opportunity to take depositions.

For these reasons, the Court grants Plaintiffs' Motion for Rule 56(d) Relief and will permit Plaintiffs to continue pursuing discovery on the matters described in the Lichten Affidavit, which are relevant to the issue of significant impact on motor carrier's prices, routes and services. Plaintiffs have adequately described the discovery they seek, explained the relevance of the discovery, and explained why the discovery had not been obtained previously. Accordingly, the Court denies Defendant's Motion for Summary Judgment without prejudice.

**C. Preemption Under the Commerce Clause**

The Court rejects Lasership's argument that the Massachusetts IC Statute is unconstitutional as applied to this case because Lasership fails to show how application of the Massachusetts IC Statute to this case would discriminate against or improperly burden interstate commerce. The Commerce Clause in Article I of the U.S. Constitution provides that "Congress

20

shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. Art. I,

§ 8, cl. 3. "The negative implication of the Commerce Clause (the Dormant Commerce Clause) .

. . includes a prohibition on state regulation that 'discriminates against or unduly burdens

interstate commerce and thereby imped[es] free private trade in the national marketplace.'"

*PSINet, Inc. v. Chapman*, 362 F.3d 227, 239 (4th Cir. 2004) (quoting *Gen. Motors Corp. v.

Tracy*, 519 U.S. 278, 287 (1997)).  The Massachusetts IC Statute does not discriminate against

interstate commerce, and application of the statute to delivery service providers would not place

undue burdens on interstate commerce.  For these reasons, the Court rejects Lasership's

argument that the Massachusetts IC Statute is unconstitutional as applied to this case under the

Commerce Clause.

Lasership cites *City of Chicago v. Atchison, Topeka & Santa Fe Railway Co.*, 357 U.S.

77, 84–85 (1958), for the proposition that "comprehensive federal regulation precludes state or

local entities from 'exercising any veto power over' interstate commerce service providers."

Def.'s Mot. Summ. J. at 16.  In that case, the Supreme Court assessed whether a city ordinance

regulating the licensure of public passenger vehicles involved in transferring passengers between

railroad stations was permissible under federal law.  *City of Chicago*, 357 U.S. at 84–85.  The

city ordinance at issue required a determination by the City that "public convenience and

necessity required additional interterminal service" before such transfer vehicles could be

licensed.  *Id.* at 80.  The Supreme Court held that the federal Interstate Commerce Act precluded

the City from exercising "unlimited discretion to determine who may transfer interstate

passengers and baggage between railroad terminals."  *Id.* at 84–85.  The Court ruled that the

Interstate Commerce Act "preclude[d] the City from exercising any veto power over such

transfer service when performed by the railroads or by their chosen agents."  *Id.* at 85.  The

ordinance would interfere with the provisions of the Interstate Commerce Act "provid[ing] for the smooth, continuous and efficient flow of railroad traffic from State to State subject to federal regulation" by giving the City "veto power" over transfer service. *Id.* at 85, 87.

The Court is not persuaded by Lasership's argument that the Massachusetts IC Statute, if applied to courier delivery service providers, would similarly give the Commonwealth of Massachusetts discretion to determine who may transfer materials in interstate commerce and is therefore impermissible under the Commerce Clause. First, Lasership cites no system of federal regulation with which enforcement of the IC Statute against courier delivery services would interfere. Second, the Massachusetts IC Statute does not regulate which service providers may operate in interstate commerce, but, rather, regulates employment relations and wages, which falls within the scope of police power traditionally retained by the states. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987) ("the establishment of labor standards falls within the traditional police power of the State"). Thus, the Court rejects Lasership's contention that the Massachusetts IC Statute as applied to courier delivery service providers is invalid under the Commerce Clause.

### D. Equitable Tolling

The Court grants in part and denies in part Plaintiffs' Motion for Equitable Tolling. The Court tolls the statute of limitations as of April 12, 2011, for the named Plaintiffs because they promptly filed suit in this Court after the dismissal their Massachusetts litigation, which involved the same parties and the same cause of action. The Court denies Plaintiffs' request for equitable tolling for the putative class members because Virginia does not recognize equitable tolling of a statute of limitations for unnamed, putative class members.

A federal court sitting in diversity applies the law of the forum state with respect to statutes of limitations and equitable tolling. *Wade v. Danek Med., Inc.*, 182 F.3d 281, 288 (4th Cir. 1999). In Virginia, "statutes of limitations are strictly enforced and must be applied unless the General Assembly has clearly created an exception to their application." *Rivera v. Witt*, 512 S.E.2d 558, 559 (Va. 1999). "A statute of limitations may not be tolled, 'or an exception applied, in the absence of a clear statutory enactment to such effect.'" *Casey v. Merck & Co., Inc.*, 722 S.E.2d 842, 845 (Va. 2012) (quoting *Arrington v. Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995)).

Section 8.01-229(E)(1) of the Code of Virginia provides that "if any action is commenced within the prescribed limitation period and for any cause . . . is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period." VA. CODE ANN. § 8.01-229(E)(1) (2012). "[A]n action filed in a foreign jurisdiction may trigger tolling under Code § 8.01–229(E)(1)." *Casey*, 722 S.E.2d at 845. "However, for tolling to be permitted, the subsequently filed action must be filed by the same party in interest on the same cause of action in the same right." *Id.; see also McDaniel v. North Carolina Pulp Co.*, 95 S.E.2d 201, 206 (Va. 1956), *overruled on other grounds by Harmon v. Sadjadi*, 639 S.E.2d 294, 299 (Va. 2007) (permitting tolling where "the real party in interest remained the same; the suit was instituted in the same right; and the cause of action was the same"). "For the filing of an action to toll the statute of limitations from running on a subsequently filed action pursuant to Code § 8.01–229(E)(1), there must be identity of the parties in the two lawsuits." *Casey*, 722 S.E.2d at 846. "[T]he party who brought the original action must be the same as the

plaintiff in the subsequent action or a recognized representative of that plaintiff asserting the same cause and right of action." *Id.*

"Under Virginia law, a class representative who files a putative class action is not recognized as having standing to sue in a representative capacity on behalf of the unnamed members of the putative class." *Id.* at 846. "[T]here is no identity of parties between the named plaintiff in a putative class action and the named plaintiff in a subsequent action filed by a putative class member individually." *Id.* "[A] putative class action cannot toll the running of the statutory period for unnamed putative class members who are not recognized under Virginia law as plaintiffs or represented plaintiffs in the original action." *Id.*

Virginia law permits the tolling of the applicable statute of limitations in this case because Plaintiffs are the same parties who originally filed in Massachusetts state court the claims asserted in the Complaint filed in this Court. Plaintiffs promptly filed their Complaint less than two weeks after the Massachusetts suit was dismissed following removal to federal court in Massachusetts. Plaintiffs, in this case, are the same plaintiffs with the same interests and same causes of action against the same defendant as those in the Massachusetts litigation originally filed on April 12, 2011. Therefore, the Court grants in part Plaintiffs' Motion for Equitable Tolling and tolls the statute of limitations as of April 12, 2011, as to the named plaintiffs, Messrs. Sanchez, Medina, and Edmond. *See Casey*, 722 S.E.2d at 846; VA. CODE ANN. § 8.01-229(E)(1).

The Court denies Plaintiffs' motion as to the unnamed, putative class plaintiffs because Virginia does not recognize equitable tolling of a statute of limitations for unnamed, putative class plaintiffs. *See Casey*, 722 S.E.2d at 846. Plaintiffs argue that the federal statute of limitations tolling doctrine, as explained in *American Pipe & Construction Co. v. Utah*, 414 U.S.

24

538 (1974), is applicable here and provides that the statute of limitations should be tolled for putative class members as well as the named plaintiffs. Pls.' Mem. Equitable Tolling at 4. In *American Pipe*, the Supreme Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. In so holding, the Court reasoned that it was "the rule most consistent with federal class action procedure." *Id.* at 554. *American Pipe*, however, involved claims brought under several federal statutes and therefore fell within the federal question jurisdiction of the federal courts. The Fourth Circuit has held that a federal court sitting in diversity applies the law of the forum state with respect to statutes of limitations and equitable tolling issues. *Wade v. Danek Med., Inc.*, 182 F.3d 281, 288 (4th Cir. 1999); *see also Flick v. Wyeth LLC*, 2012 U.S. Dist. LEXIS 78900, at *19-20 (W.D. Va. June 6, 2012). For this reason, this Court looks to Virginia law in deciding whether tolling applies to the unnamed, putative class plaintiffs in this case, and, in light the Virginia Supreme Court's holding in *Casey v. Merck & Co., Inc.*, 722 S.E.2d 842 (Va. 2012), the Court answers this question in the negative. Thus, the Court grants Plaintiffs' Motion for Equitable Tolling as to the named plaintiffs but denies the motion as to the putative class members.

## IV.    CONCLUSION

The Court grants Plaintiffs' Motion for Partial Summary Judgment and holds that the Massachusetts IC Statute is applicable to Plaintiffs' claims because the contractual relationship at issue in this case was formed in Massachusetts, and Massachusetts has a substantial interest in how Massachusetts-based workers are classified and compensated.

The Court grants Plaintiffs' Motion for Rule 56(d) Relief and denies without prejudice Defendant's Motion for Summary Judgment. The Court denies Defendant's Motion to Strike as

to the Lichten Affidavit because Rule 56(d) does not forbid the affidavit from setting forth the affiant's view of the relevant law and plausible factual allegations in support of his request for a greater opportunity to pursue discovery. Plaintiffs have demonstrated that they are entitled to more time to pursue discovery before the Court decides Defendant's summary judgment motion. Plaintiffs will have an opportunity to pursue further discovery on the question of whether application of the Massachusetts IC Statute to Plaintiffs' claims significantly impacts the courier delivery service provider's prices, routes, and services such that preemption under the FAAAA is warranted.

The Court grants in part and denies in part Plaintiffs' Motion for Equitable Tolling. As to the named Plaintiffs, Milton Manuel Sanchez, Carmelo Medina, and Gerard Edmond, the applicable statute of limitations is tolled as of April 12, 2011. The Court denies the motion as to the unnamed, putative class plaintiffs.

So Ordered.

August 27, 2012

_____/s/_____

Gerald Bruce Lee
United States District Judge
